IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARTEE FITZGERLD JACKSON     \*
                                                                     \*

           v.                                       \*      Civil Case No. CCB-13-2086
                                                                     \*

COMMISSIONER, SOCIAL SECURITY   \*
                                                                   \*
                                                    \*\*\*\*\*\*\*\*\*\*\*\*\*

REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014-01, the above-referenced case was referred to me to review the parties' dispositive cross-motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). I have considered the parties' cross-motions for summary judgment. ECF Nos. 17, 19. This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). I find that no hearing is necessary. Local R. 105.6 (D. Md. 2011). For the reasons set forth below, I recommend that the Commissioner's motion be granted and that Mr. Jackson's motion be denied.

Mr. Jackson applied for Supplemental Security Income on January 13, 2010, alleging a disability onset date of November 1, 2009. (Tr. 145-51). His claim was denied initially on June 28, 2010, and on reconsideration on January 11, 2011. (Tr. 56-60, 66-67). An Administrative Law Judge ("ALJ") held a hearing on February 6, 2012, (Tr. 26-48), and subsequently denied benefits to Mr. Jackson in a written opinion, (Tr. 9-25). The Appeals Council declined review, (Tr. 1-5), making the ALJ's decision the final, reviewable decision of the agency.

The ALJ found that Mr. Jackson suffered from the severe impairments of positive HIV status, Hepatitis C, lumbar degenerative disc disease, arthritis, peripheral edema, morbid obesity,

chronic obstructive pulmonary disorder, major depressive disorder, generalized anxiety disorder, dependent personality disorder, and a history of polysubstance abuse. (Tr. 14). Despite these impairments, the ALJ concluded that Mr. Jackson retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 416.967(a) except he is limited to only occasional stooping, twisting, crouching, kneeling, crawling, balancing and climbing stairs and ramps, no climbing ladders, ropes or scaffolds, must avoid hazards such as unprotected heights and dangerous machinery, must avoid concentrated exposure to dust, flumes [sic], gases, odors and extremes of temperature and humidity, can understand, remember and carry out simple instructions, and can only perform simple routine tasks with no change in work setting, no required interaction with the public and only occasional interaction with supervisors and co-workers.

(Tr. 16). After considering testimony from a vocational expert ("VE"), the ALJ determined that Mr. Jackson could perform jobs existing in significant numbers in the national economy, and that he was not therefore disabled. (Tr. 19-20).

Mr. Jackson disagrees. He asserts several arguments in support of his appeal: (1) that the ALJ's physical and mental RFC assessments were not supported by medical evidence; (2) that the ALJ assigned inadequate weight to the opinion of four treating sources; and (3) that the ALJ's hypothetical to the VE was not supported by substantial evidence because it was based on the RFC assessment. Each argument lacks merit.

Mr. Jackson first argues that the ALJ premised the physical and mental RFC assessments on "pure conjecture," because no physician provided the precise RFC assessment determined by the ALJ. Pl. Mot. 19-22. However, an ALJ need not parrot a single medical opinion, or even assign "great weight" to any opinions, in determining an RFC assessment. Instead, an ALJ is required to consider "all of the relevant medical and other evidence." *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The physical RFC assessment determined by the ALJ in this case takes into account all of the evidence cited by the ALJ, including opinions of state agency

physicians who found Mr. Jackson to be capable of a greater exertional level than that determined by the ALJ. (Tr. 265-72, 327-34). The ALJ assigned those opinions "little weight," not "no weight," and further relied upon the treatment notes from Mr. Jackson's medical appointments in determining the RFC assessment. (Tr. 17, 18). Similarly, in formulating Mr. Jackson's mental RFC assessment, the ALJ cited Mr. Jackson's own reports of his activities and the treatment notes from his appointments with his mental health providers. (Tr. 15, 17, 19). Accordingly, the ALJ's RFC analysis is consistent with the medical evidence of record and rests on a sufficient evidentiary basis.

Next, Mr. Jackson argues that the ALJ erred by assigning too little weight to the opinions of several treating sources. Pl. Mot. 22-25. First, he contends that the ALJ should have relied upon the opinions proffered by Dr. Ramani Reddy and CRNP Annette Kingel, (Tr. 335-37); Dr. Sherell Mason, (Tr. 338-40); and Dr. John McNeil and physician's assistant Zakiya James, (Tr. 431-33). Each of those three opinions states that Mr. Jackson cannot sit for six hours, stand for two hours, lift and carry ten pounds, or sustain concentration and job duties. (Tr. 336-37, 339-40, 432-33). Moreover, two of the opinions contend that Mr. Jackson must lie down and rest for at least three hours of an eight hour workday. (Tr. 339, 432). This Court's role is not to reweigh the evidence or to substitute its judgment for that of the ALJ, but simply to adjudicate whether the ALJ's decision was supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Here, the ALJ's decision meets that standard.

A treating physician's opinion merits controlling weight only when two conditions are met: 1) it is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and 2) it is not inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2); *Craig,* 76 F.3d at 590 (refined by a later amendment to regulations as described by *Pittman v. Massanari*, 141 F. Supp. 2d 601, 608 (W.D.N.C. 2001)). As the ALJ

noted, the physicians' treatment notes do not substantiate the level of disability suggested in the opinions. *See, e.g.* (Tr. 260-62) (May, 2010 examination with Dr. Reddy at which range of motion of all joints normal except some right knee pain, gait was normal, and no inflammation of any joint); (Tr. 302) (June, 2010 appointment with Dr. Mason at which physical exam was normal); (Tr. 507-11) (August, 2010 appointment with Dr. McNeil at which physical exam was normal); (Tr. 492-93) (February, 2011 appointment with Ms. James during which Mr. Jackson complained of arthritic pain, and reported some relief from Naprosyn; Ms. James prescribed no further treatment or change in medications); (Tr. 459-60) (September, 2011 appointment with Nurse Johnson at Total Health Care at which gait and station was normal, and findings normal except for mild peripheral edema). The ALJ appropriately considered that discrepancy between the treatment notes and the medical opinions. *See Halverson v. Astrue*, 600 F.3d 922, 930 (8th Cir. 2010) (citing *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) and *Davidson v. Astrue*, 578 F.3d 838, 842 (8th Cir. 2009)) (finding that an ALJ properly discounted a treating physician's opinions where they were inconsistent with the medical evidence and with the doctor's own treatment notes); *see generally* 20 C.F.R. § 404.1527(c)(3) (stating that "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). In light of the substantial evidence undermining the allegations in the opinion forms, and the fact that this Court is not to reweigh the evidence considered by the ALJ, remand is unwarranted.

Mr. Jackson makes a similar argument with respect to the opinion of his treating psychiatrist, Dr. Griffin, who opined that Mr. Jackson cannot deal with changes in a routine work setting, and that he meets or equals Medical Listing 12.04. Pl. Mot. 24-25. The ALJ expressly considered Listing 12.04, and determined that Mr. Jackson did not meet its criteria. (Tr. 15). Citing to the evidence of record, the ALJ found that Mr. Jackson suffered mild restriction in

activities of daily living, moderate difficulties in social functioning and concentration, persistence, and pace, and no extended episodes of decompensation. *Id.* The ALJ supported the Listing analysis with substantial evidence, specifically citing Mr. Jackson's ability to prepare meals, do cleaning and laundry, shop, attend religious services, conduct himself appropriately at medical appointments, and read and watch television, in addition to his lack of emergent or inpatient psychiatric treatment. (Tr. 15). Moreover, the ALJ provided a detailed summary of Mr. Jackson's mental health treatment notes, (Tr. 17), noting that he displayed a substantial improvement with medication, and reported improvement in his symptoms on a number of occasions. Accordingly, the ALJ properly assigned only "little weight" to Dr. Griffin's opinion suggesting marked restrictions in activities of daily living and social functioning.

Finally, Mr. Jackson argues that the ALJ's hypothetical to the VE did not include all of the necessary limitations. Pl. Mot. 25-26. The ALJ is afforded "great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question." *Koonce v. Apfel*, 166 F.3d 1209, 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999) (citing *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1986)). Essentially, Mr. Jackson posits that the hypothetical, which was premised on the RFC assessment, was deficient because the RFC assessment was deficient. As discussed above, the ALJ provided substantial evidence to reject some of the more severe limitations suggested in physicians' opinions and to support the restrictions included in the RFC assessment.

In addition, Mr. Jackson contends that the hypothetical did not contain a "function-by-function" assessment of his physical RFC. Pl. Mot. 26. In the absence of any express modifications, the ALJ's use of the standard term "sedentary work" incorporated the functional capacities required to perform that work, such as sitting, standing, walking, lifting, and carrying requirements. No further functional description was required in order to present the VE with an

understandable hypothetical, and the VE did not request any clarification. Because the RFC assessment, and the hypothetical, were supported by substantial evidence, I recommend that the ALJ's opinion be affirmed.

CONCLUSION

For the reasons set forth above, I respectfully recommend that:

1. the Court GRANT Defendant's Motion for Summary Judgment (ECF No. 19); and

2. the Court DENY Plaintiff's Motion for Summary Judgment (ECF No. 17) and CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.

Dated: April 24, 2014  /s/
Stephanie A. Gallagher
United States Magistrate Judge